# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN TRANG, | Case No.: 2:17-cv-00162-APG-EJY |
| Plaintiff/Counterdefendant | **Order Granting in Part Counterdefendant Trang's Motion to Dismiss** |
| v. | [ECF No. 55] |
| BANK OF GEORGE, *et al.*, | |
| Defendants/Counterclaimants | |

Steven Trang (Trang) sues defendant Bank of George, his former employer, and defendant T. Ryan Sullivan, the Bank's president, for wrongful termination under the False Claims Act (FCA) and Nevada state law.[1] ECF No. 23.  Trang alleges that the defendants wrongfully terminated him for investigating the Bank's scheme to fraudulently induce the Small Business Administration (SBA) to guarantee loans that the defendants knew did not meet SBA guidelines.  The defendants[2] filed counterclaims against Trang for (1) breach of the parties' confidentiality agreement and the Bank's Code of Ethics, (2) breach of the duty of loyalty, (3) breach of the covenant of good faith and fair dealing, (4) negligence, (5) breach of fiduciary duty, (6) intentional interference with prospective business advantage, and (7) defamation per se.

---

[1] Trang originally brought this case as a qui tam action, but the United States of America was dismissed, and Trang now proceeds on his individual claims against the Bank and Sullivan. *See* ECF Nos. 1; 16; 22; 23.

[2] The counterclaim identifies Sullivan as a counterclaimant but none of the counterclaims refers to him as asserting the claim, and it does not appear that Sullivan would be entitled to bring at least some of the claims, such as the contractual claims.  Because I grant the defendants leave to amend, they should consider which counterclaims are appropriately asserted by which defendant/counterclaimant.

1   Trang moves to dismiss the counterclaims under Nevada's anti-SLAPP statute, the

2   *Noerr-Pennington* doctrine, and public policy because the counterclaims seek to impose civil

3   liability for Trang's acts of petitioning the government.  Alternatively, he contends the

4   counterclaims are not plausibly alleged.  Trang seeks an award of costs and attorney's fees, as

5   well as $10,000 in statutory damages, under Nevada's anti-SLAPP statute.

6   The Bank and Sullivan respond that the motion fails under the anti-SLAPP statute

7   because Trang did not meet his initial burden of showing his communications were in good faith.

8   The defendants also argue their claims are not based on Trang's reports to the government.

9   Instead, they assert Trang stole and disclosed confidential loan documents to "unknown

10  sources." ECF No. 61 at 9.  They also assert he engaged in other non-petitioning activity, such as

11  trying to use confidential information to secure a promotion, failing to fulfill his job duties,

12  conducting rogue investigations, and failing to internally report the alleged fraud.  The

13  defendants argue that if I deny the anti-SLAPP motion, I should grant them fees and costs.

14  Finally, they contend their claims are adequately pleaded.

15  I deny Trang's anti-SLAPP motion because he did not meet his initial burden of showing

16  by a preponderance of the evidence that his communications to the government were in good

17  faith.  I deny both sides' requests for fees and costs.  I grant Trang's motion to dismiss the

18  counterclaims with leave to amend, except for a portion of the defamation per se claim, which I

19  dismiss with prejudice because Trang's statements in the unsealed complaint are absolutely

20  privileged.

21  / / / /

22  / / / /

23  / / / /

# I. ANALYSIS

## A. Anti-SLAPP

Under Nevada's anti-SLAPP statute, a "person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Nev. Rev. Stat. § 41.650.  A defendant (or in this case, a counterdefendant) may file a special motion to dismiss if the defendant can show "by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.* § 41.660(3)(a).  As relevant here, a good faith communication in furtherance of the right to petition means:

> [c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; [or]
> [a w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law . . .
>
> which is truthful or is made without knowledge of its falsehood.

*Id.* §§ 41.637(2)-(3).  If the defendant makes this initial showing, the burden shifts to the plaintiff to show "with prima facie evidence a probability of prevailing on the claim." *Id.* § 41.660(3)(b).

Trang has not presented any evidence in support of his motion, and he therefore has not shown by a preponderance of the evidence that he made good faith communications that were truthful or without knowledge of falsehood.  Because Trang has not met his initial burden, I deny his anti-SLAPP motion.  I deny the defendants'

1  request for fees because the motion was not wholly frivolous or vexatious. *See* Nev. Rev.

2  Stat. 41.670(2).  The counterclaims, though often pleaded in conclusory fashion as

3  discussed below, appear to be directed at Trang's communications with the federal

4  government and filings made in this FCA case, and thus arguably implicate the anti-

5  SLAPP statute.

6      **B.  Failure to State a Claim**

7      In considering a motion to dismiss, I take all well-pleaded allegations of material fact as

8  true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.*

9  *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of

10  legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation*

11  *v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient

12  factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550

13  U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a

14  formulaic recitation of the elements of a cause of action." *Id.* at 555.

15      Trang contends each of the counterclaims fails under the *Noerr-Pennington* doctrine and

16  related public policy concerns about retaliation against FCA whistleblowers.  "The *Noerr-*

17  *Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people

18  . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d

19  923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I).  Under this doctrine, "those who

20  petition any department of the government for redress are generally immune from statutory

21  liability for their petitioning conduct." *Id.*  "In determining whether the burdened conduct falls

22  under the protection of the Petition Clause, [courts] must give adequate breathing space to the

23

right of petition." *Id.* at 931-32 (quotation omitted).  Consequently, immunity applies not only to direct petitioning activity, but also to conduct incidental to it. *Id.* at 934-35.

Although the *Noerr-Pennington* doctrine arose out of "cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability," it "has since been applied to actions petitioning each of the three branches of government, and has been expanded beyond its original antitrust context." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  As relevant here, the doctrine may apply to bar state law claims. *Id.*

"Not all petitioning activity is immunized, however." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).  Courts have recognized an exception for "sham" petitioning conduct. *Id.*  To fall within the sham exception in the litigation context, the petitioning activity "must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Theme Promotions*, 546 F.3d at 1007.  If the challenged litigation is objectively baseless, then the court considers whether the litigant acted with an improper motive. *Id.*; *Sosa*, 437 F.3d at 934.  Examples of when the sham exception might apply include: (1) "where the lawsuit is objectively baseless" and the litigant's "motive in bringing it was unlawful," (2) where the litigant files "a series of lawsuits . . . without regard to the merits and for an unlawful purpose," and (3) if the litigant makes "intentional misrepresentations to the court" that "deprive the litigation of its legitimacy." *Sosa*, 437 F.3d at 938 (simplified).

### 1.  Breach of Contract

The first counterclaim alleges that Trang breached a confidentiality agreement with the Bank by taking confidential loan documents from the Bank and refusing to return them despite being asked to do so. ECF No. 47 at 26.  The Bank also alleges that in January 2016, Trang

1  revealed to the Bank that he had taken documents from the Bank after his termination to

2  "leverage [the Bank] into settling his claims." *Id.*

3      Trang argues this claim is implausible because it alleges Trang attempted to settle his

4  claims against the Bank in January 2016, but he had not been terminated by that date.  He also

5  argues that the claim is pleaded in conclusory fashion, so he cannot determine whether it is based

6  on his petitioning activity, and therefore potentially subject to the *Noerr-Pennington* doctrine or

7  against public policy.  But he contends that because the Bank refers to him appropriating loan

8  documents, and that is what he disclosed to the government in support of his FCA claim, he

9  cannot be sued for this activity under the *Noerr-Pennington* doctrine and public policy.

10     The Bank responds that the breach of contract counterclaim is not based on Trang's

11 disclosures to the government.  It contends the claim is based on Trang taking and disclosing

12 confidential loan documents.  It asserts that "the extent of Trang's breaches are unknown:

13 discovery will reveal how many files Trang converted and who received same, aside from the

14 government." EF No. 61 at 7.  The Bank contends that this claim is based on Trang's conduct

15 before he made his FCA claims.

16     The breach of contract claim is pleaded in too conclusory a fashion to determine whether

17 it is barred by *Noerr-Pennington* or public policy.  The Bank alleges that Trang breached the

18 confidentiality agreement by appropriating and disclosing loan documents, but it does not

19 identify what loan documents are at issue and to whom, besides the government, Trang allegedly

20 disclosed them.  Trang's FCA claim is based on his disclosure of loan documents to the

21 government, and the defendants appear to have no information that Trang disclosed loan

22 documents to anyone other than the government, because they concede that it is unknown who

23

6

else may have seen the loan documents.  Their hope that discovery will reveal other disclosures is insufficient to avoid dismissal for failure to state a plausible claim.

The allegation that Trang took loan documents after his termination to leverage "settling [his] claims" is likewise conclusory and implausible as currently alleged.  It is unclear what claims Trang was attempting to settle or what documents he was using.  The counterclaim alleges that in January 2016, Trang revealed that he had taken documents after his termination, but Trang was not terminated until months later. *See* ECF No. 47 at 18 (admitting Trang was terminated on August 26, 2016).  Additionally, although the Bank generally alludes to the sham exception, the counterclaims have no factual allegations that Trang's FCA claims were objectively baseless or that Trang acted with an improper motive.

I therefore dismiss this claim.  However, because it is not clear that amendment would be futile, I grant the defendants leave to amend if facts exist to do so. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102-03 (9th Cir. 2018) ("Leave to amend can and should generally be given, even in the absence of such a request by the party," so long as amendment would not be futile).

## 2.  Breach of the Duty of Loyalty

Count two alleges that Trang breached his duty of loyalty as a Bank employee by: (1) conducting "rogue investigations and audits," (2) failing to properly analyze borrower financials and loan underwriting, (3) failing to report potential fraud, (4) obtaining confidential information and then trying to use that information to demand a promotion, and (5) approving loan applications he later claimed were fraudulent. ECF No. 47 at 27-28.

Trang moves to dismiss this claim, arguing that there are no allegations that he acted contrary to the Bank's interests, impermissibly disclosed confidential information, or usurped the Bank's opportunities.  He contends that the Bank's alleged dissatisfaction with his job

performance and its complaint that he failed to internally report the potential fraud arise directly

out of his investigation into, and reports of, the Bank's fraud to the government, and therefore

the claim is barred by *Noerr-Pennington*, and public policy.  He also contends that mere failure

to perform his job in a manner satisfactory to the Bank does not amount to a breach of the duty

of loyalty.  And he argues this claim effectively seeks contribution or indemnification for his

alleged participation in the fraudulent activity, which is against public policy.  Finally, he argues

that to the extent this claim is based on something other than his protected activities, the claim is

pleaded in conclusory fashion.

The Bank responds that this claim is based on Trang's failure to properly analyze

borrower financials and loan underwriting, provide credible leads, or report misconduct, as well

as his use confidential information to demand a promotion, so it is not based on his

communications with the government.  The Bank also argues that its allegations that Trang took

confidential bank information and conducted rogue investigations and audits is not directly

connected to ongoing litigation.  Finally, the Bank argues that contribution or indemnity do not

apply in this case because the Bank will not have any liability under the FCA to offset due to the

FCA claim against it being dismissed.

As I stated in *Wilson v. Nevada Affordable Housing Assistance Corp.*, "Nevada courts

tend to follow the Restatement of Agency, which states that an employee owes a duty of loyalty

to act solely in the interests of her employer within the business area for which she is employed."

No. 2:15-cv-01387-APG-CWH, 2017 WL 1276055, at *4 (D. Nev. Mar. 30, 2017) (citing

Restatement (Second) of Agency § 387 ("Unless otherwise agreed, an agent is subject to a duty

to his principal to act solely for the benefit of the principal in all matters connected with his

agency.")); *White Cap Indus., Inc. v. Ruppert*, 67 P.3d 318, 319 (Nev. 2003) (following the

1  Restatement (Second) of Agency § 381 and finding no breach of the duty of loyalty by failing to

2  disclose another employee's preparations to compete with their employer)).  "This district has

3  concluded that employees, even those who are not officers or directors, owe a duty of loyalty."

4  *Id.* (citing *New England Life Ins. Co. v. Lee*, No. 2:14-CV-01797-JCM-NJK, 2015 WL 1413391,

5  at *6 (D. Nev. Mar. 27, 2015); *Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co.*, No.

6  2:10-CV-00288-RLH-PAL, 2010 WL 2541729, at *2 (D. Nev. June 17, 2010)).  Examples of

7  breaches of the duty of loyalty include acting contrary to the employer's interests, disclosing its

8  confidential information to outside sources to the employer's detriment, competing against the

9  employer, or usurping an opportunity that belongs to the employer. *See id.*; Restatement

10 (Second) of Agency, §§ 388-89, 393, 395-96.

### a.  Investigations and Audits

12        This claim is also too conclusory to determine if it is barred by *Noerr-Pennington* or

13 public policy.  As currently pleaded, it appears to be based on Trang's investigation of a potential

14 fraudulent scheme to induce the SBA to approve loans it otherwise would not have approved.

15 His investigations thus were incidental to and in furtherance of his FCA claim, and a claim based

16 on that conduct would be barred *Noerr-Pennington*.  Because this claim is pleaded in conclusory

17 fashion and it is not clear that amendment would be futile, I will allow the Bank to amend if facts

18 exist to do so.

### b.  Failing to Analyze Financials and Underwriting

20        This portion of the duty of loyalty claim is not barred by the *Noerr-Pennington* doctrine

21 or public policy at this stage of the proceedings because it does not appear, on its face, to be

22 based on any petitioning activity or conduct incidental to petitioning activity.  Instead, it is based

23 on Trang's alleged failure to perform his job because he did not properly analyze financials and

loan underwriting.  Trang contends that this portion of the claim is really based on his refusal to approve fraudulent loans.  But that is not how it is pleaded, and Trang's argument raises a factual dispute not suitable for resolution at dismissal.

The defendants have not pointed to case law that would support the conclusion that poor job performance alone is sufficient to constitute a breach of the duty of loyalty.  The defendants cite to *Burch ex rel. United States v. Piqua Engineering, Inc.*, but that case stated that improperly performing job duties may support a breach of contract claim. 145 F.R.D. 452, 456 (S.D. Ohio 1992).  The duty of loyalty claim in that case was based on allegations that the employees made "false and damaging statements about [the employer] to the media, based on information they acquired during the course of their employment . . . ." *Id.*  Consequently, I dismiss this portion of the breach of duty of loyalty claim for failure to state a claim.  I grant the Bank leave to amend if facts exist to do so.

### c.  Failing to Report Fraud

A defendant in an FCA action cannot assert counterclaims for contribution or indemnification from the relator-employee even if the relator was engaged in the alleged fraudulent activity. *See Morts., Inc. v. U.S. Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209, 213-14 (9th Cir. 1991).  Courts have also disallowed counterclaims that, "if prevailed on, would end in the same result." *Id.* at 214.  However, this rule applies only where the counterclaim would "have the effect of offsetting liability" or where the counterclaim is "depend[e]nt on a qui tam defendant's liability." *United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830-31 (9th Cir. 1993).  Even dependent counterclaims may proceed "until the qui tam defendant's liability is established." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1208 (9th Cir. 2009), *as amended on denial of reh'g and reh'g en banc* (Jan. 6, 2010).  "If [the] qui tam

defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.  On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits." *Id.* at 1209 (quotation omitted).

Although the FCA claim against the Bank has been dismissed, that dismissal was without prejudice, so it is possible that the Bank may need to offset liability at some point. Additionally, Trang may be able to show, in support of his own claims, that the defendants retaliated against him for revealing their fraudulent scheme.  If he shows the defendants were in fact engaged in a fraudulent scheme, it would be against public policy to allow the Bank to recover from him for not first reporting the defendants' own fraud to them. *See U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 29 (D.D.C. 2007) (disallowing a counterclaim that the relator "should have informed the defendant before informing the government" because that "would place affirmative duties on a relator that the FCA does not envision" and "would create the perverse result of making a truthful relator pay to offset the liability of a wrongdoing FCA defendant").  The Bank would be seeking to hold a qui tam relator liable for not saving it from its own fraudulent scheme, which would be the effective equivalent of contribution or indemnification.  Thus, if Trang shows the defendants engaged in the alleged fraudulent scheme, then this claim will be dismissed on public policy grounds.

While the Ninth Circuit allows this type of claim to proceed pending resolution of whether the Bank engaged in the alleged fraud, the counterclaim must plausibly allege a breach of the duty of loyalty that harmed the Bank.  It currently does not do so because it is unclear from the counterclaim's allegations how the Bank was harmed by Trang's failure to report the

1  fraud to the Bank earlier if the Bank was not engaged in a fraud.  But because it is not clear that

2  amendment would be futile, I grant leave to amend this claim if facts exist to do so.

3                          *d.  Using Confidential Information to Demand a Promotion*

4          The breach of the duty of loyalty claim based on Trang's alleged attempt to use

5  confidential information to demand a promotion is pleaded in too conclusory a fashion to

6  plausibly state a claim.  The counterclaim is silent on what confidential information Trang

7  obtained, how he attempted to use it to demand a promotion, or when he allegedly did so.

8  Absent plausible allegations of this alleged breach, it is also impossible to analyze whether it

9  may run afoul of *Noerr-Pennington* or public policy.  I therefore dismiss this claim, with leave to

10  amend if facts exist to do so.

11                          *e.  Approving Loan Applications Trang Later Claimed Were Fraudulent*

12          This portion of the breach of the duty of loyalty claim raises similar concerns as the claim

13  that Trang failed to report the alleged fraud to the Bank.  If the loans were in fact fraudulent, then

14  the Bank is seeking to hold Trang liable for his alleged participation in the fraud, which is not

15  permitted as it effectively seeks contribution or indemnification.  If the loans were not

16  fraudulent, then the Bank has failed to plausibly allege any harm caused by Trang signing off on

17  loans he later claimed were fraudulent.  I therefore dismiss this claim.  However, because it is not

18  clear that amendment would be futile, I grant leave to amend if facts exist to do so.

19                          3.  Breach of the Implied Covenant of Good Faith and Fair Dealing

20          Count three alleges Trang breached the implied covenant of good faith and fair dealing in

21  the confidentiality agreement and the Bank's code of ethics when he failed to provide the Bank

22  with any information to support his allegations of misconduct. ECF No. 47 at 28-29.  Trang

23  contends this claim is based on his protected petitioning activity of reporting the fraud to the

1 government, so it is barred by *Noerr-Pennington* and public policy because he need not first raise

2 his concerns of wrongdoing with the alleged wrongdoer, as that would allow for retaliation.  The

3 Bank responds that this claim is based on Trang's failure to internally report to the Bank the

4 misconduct he alleges.  The Bank thus contends it is not based on his reporting to the

5 government, so *Noerr-Pennington* does not apply.

6        This claim fails for the same reasons discussed above with respect to the breach of the

7 duty of loyalty resting on allegations that Trang did not internally report the fraud.  I therefore

8 dismiss it, with leave to amend if facts exist to do so.

9             4.  Negligence

10       Count four alleges that Trang owed the Bank a duty of care while carrying out his duties

11 as a vice president of the Bank, and that he breached that duty when he conducted rogue

12 investigations, took confidential information, and disclosed that information. ECF No. 47 at 29-

13 30.  Trang argues this claim is based on his protected petitioning activity and should be

14 dismissed under *Noerr-Pennington* and public policy.  The Bank argues that this claim is based

15 on "rogue investigations and document theft," and there is no direct connection between Trang's

16 conduct and ongoing litigation because Trang's conduct took place before he reported the

17 alleged fraud to the government.

18       This claim is also too conclusory to determine if it is barred by *Noerr-Pennington* or

19 public policy.  As currently pleaded, it appears to rest on Trang's protected activities and conduct

20 in furtherance of his FCA claim.  Because the claim is pleaded in conclusory fashion, it is

21 possible that the Bank is referring to some investigations, confidential information, or disclosures

22 other than those related to Trang's FCA claim.  I therefore grant leave to amend if facts exist to

23 do so.

### 5.  Breach of Fiduciary Duty

Count five alleges that Trang owed a fiduciary duty to the Bank to report improper or illegal conduct, but he failed to report potentially fraudulent conduct. ECF No. 47 at 30.  Trang argues that he was not a corporate officer or director, so he owed no fiduciary duty to the Bank. He also argues that this claim likewise arises from his protected activity, so it is barred.  Finally, he contends this is duplicative of the duty of loyalty claim, and so should be dismissed.

 The Bank does not respond to Trang's argument that he does not owe a fiduciary duty because he is not an officer or director.  I therefore grant this portion of Trang's motion as unopposed. LR 7-2(d).  Additionally, this claim suffers from similar defects discussed with respect to the other failure to report claims.  However, I grant the Bank leave to amend if facts exist to do so.

### 6.  Intentional Interference with Prospective Business Advantage

Count six alleges the Bank has prospective economic relationships with clients and potential clients, Trang knew about these relationships, Trang "acted in a manner so as to prevent these economic relationships from occurring," he did so without privilege or justification, and the Bank's business was actually disrupted. ECF No. 47 at 30-31.  Trang argues that this claim is based on his petitioning activity and is therefore barred.  He also contends that the interference must be improper or unlawful, and he lawfully pursued his FCA claim against the Bank.  The Bank responds that this claim is not based on Trang's communications with the government.

This claim is merely a recitation of the cause of action's elements and is pleaded in so conclusory a fashion that there is no factual content.  It is unclear what actions Trang allegedly took, besides reporting the alleged fraud to the government and filing this action, that form the basis of this claim.  I therefore cannot determine whether it is barred by *Noerr-Pennington* or

1  public policy.  However, like the Bank's other counterclaims, it is not clear that amendment

2  would be futile, so I grant leave to amend.

3                7.  Defamation Per Se

4        Count seven alleges that Trang made false and defamatory statements about the Bank by

5  stating that it was engaged in illegal activity by defrauding the government. ECF No. 47 at 31.

6  This claim alleges that "upon unsealing the Complaint and including facts in which the Court

7  had already made its ruling," Trang "made an unprivileged publication of his statements"

8  regarding the Bank's alleged illegal activity. *Id.*

9        Trang argues this claim fails because the only statement identified is his complaint, and

10  that is a privileged communication.  He also disputes the characterization that the government

11  refused to prosecute the FCA claims or that the court dismissed those claims as unmeritorious.

12  Rather, he contends the government chose not to prosecute because it had not suffered a loss.  He

13  further contends there has been no finding as to whether the Bank engaged in illegal activity.

14        The Bank responds that the defamation per se claim is based on statements other than

15  those in the unsealed complaint "and discovery will reveal as much." ECF No. 61 at 13.  As to

16  the statements in the complaint, the Bank argues that it has shown that those statements were

17  meritless because the United States moved to dismiss the FCA claims that Trang brought on the

18  government's behalf.  The Bank argues that Trang's statements in the complaint are not

19  absolutely privileged because it contends the privilege does not extend to statements made in an

20  initial court filing.

21        To allege a claim for defamation, a plaintiff must allege: "(1) a false and defamatory

22  statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a

23  third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."

*Pope v. Motel 6*, 114 P.3d 277, 315 (Nev. 2005).  A statement is defamatory if it "would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (quotation omitted).  If the defamatory statement "imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quotation omitted).

To the extent this claim is based on statements other than those in the unsealed complaint, the counterclaim does not plausibly allege a claim.  It does not state facts regarding what statement was made, why it is false and defamatory, to whom Trang made the statement, that the statement was unprivileged, or fault.  Because it is not clear that amendment would be futile, I grant leave to amend if facts exist to do so.[3]

However, I dismiss with prejudice the defamation claim based on statements in Trang's unsealed complaint.  Nevada recognizes "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002) (quotation omitted).  This privilege "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." *Id.* (quotation omitted).  And it "applies not only to communications made during actual judicial proceedings, but also to communications preliminary to a proposed judicial proceeding." *Id.* at 644 (quotation omitted).

---

[3] If the Bank chooses to amend this claim, I direct its attention to *Clark County School District v. Virtual Education Software, Inc.* for the difference between defamation per se and business disparagement. 213 P.3d 496, 504-05 (Nev. 2009).

"[F]or the privilege to apply (1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation." *Clark Cnty. Sch. Dist.*, 213 P.3d at 503.  Whether the privilege applies is a question of law for the court. *Id.* at 502.

Statements in Trang's complaint that the defendants were engaged in a fraud scheme were made during an actual judicial proceeding and are related to his claims that the defendants retaliated against him for pursuing the FCA claim.  His statements thus are absolutely privileged. The Bank's position that the privilege does not apply to statements in a complaint is meritless. Because amendment would be futile, I deny leave to amend to state a defamation or other related claim based on Trang's statements in the unsealed complaint in this case. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (stating leave to amend may be denied where amendment would be futile).

## II.  CONCLUSION

I THEREFORE ORDER that plaintiff/counterdefendant Steven Trang's motion to dismiss **(ECF No. 55) is GRANTED in part**.  The motion is denied under Nevada's anti-SLAPP statute.  The motion is granted as otherwise set forth in this order.

I FURTHER ORDER that defendants/counterclaimants Bank of George and T. Ryan Sullivan may file amended counterclaims consistent with this order, if facts exist to do so. Failure to file amended counterclaims by March 25, 2022 will result in the counterclaims in ECF No. 47 being dismissed with prejudice.

DATED this 26th day of February, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE